## Lilly v. O'Brien.

(Decided March 6, 1928.)

## Appeal from Fayette Circuit Court.

1. Judges.—Affidavit merely stating belief that judge will not afford litigant a fair and impartial trial, without stating disqualifying facts, is insufficient, under Ky. Stats., sec. 968, to oust judge of right and duty to preside in trial.

2. Statutes.—When a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statutes as if plainly written in it originally.

3. Judges.—Affidavit in election contest, stating that plaintiff believed judge entertained hostile opinion, without stating material disqualifying facts, held insufficient, under Ky. Stats., sec. 968, to require judge to vacate bench.

4. Elections.—Final action of board of canvassers for election, as contemplated by Ky. Stats., sec. 1596a-12, relating to contest of election of state officers, is the issuance of certificates of election by such board after filing of expense account, as required by sections 1565b-5, 1565b-7.

5. Elections.—Under Ky. Stats., sec. 1596a-12. relating to contest of election of state officers, made applicable to city of Lexington by section 3172, a contest of election of mayor for the city of Lexington filed before final action of board of canvassers in issuing certificate of election after expense account was filed, pursuant to sections 1565b-5, 1565b-7, held not within jurisdiction of court.

6. Elections.—Courts do not have jurisdiction of election contests, except in so far as it is conferred by statute.

7. Limitation of Actions.—Limitations prescribed by statute, to bar remedies, must be pleaded, and may be waived by party entitled to invoke them.

8. Elections.—Limitation prescribed by Ky. Stats., sec. 1596a-12, relative to election contest cannot be waived and need not be pleaded, only right existing by virtue of statute, and scope and effect must be determined therefrom.

9. Elections.—Premature bringing of election contest held not to have been cured by subsequent amendment filed after cause of action had accrued, since an amendment to petition relates back to original petition, and, if original action was filed prematurely, it must be dismissed, carrying amendments with it.

10. Elections.—Under Civil Code of Practice, sec. 92, subsec. 4, defendant in election contest did not waive right to object to jurisdiction of court or prematurity of action by a general appearance and filing of various motions, since lack of jurisdiction of subject-matter of action may not be waived.

11. Judges.—Affidavit of prejudice in election contest, failing to state materially disqualifying facts, and containing allegation relative to

law partner of special judge having been promised office by defendant, based entirely on rumor, held insufficient, under Ky. Stats., sec. 968.

12. Elections.—Election contest of mayor's office in city of second class operating under Ky. Stats., sec. 3235c-1 et seq., held not within limitation of 30 days, under section 3172, when contest involves any state or district office comprising more than one county; mayor being included in general clause "any other officer," to contest whose election action must be brought within 10 days after final action by board of canvassers.

GRANT E. LILLY for appellant.

HUNT, NORTHCUTT & BUSH, D. C. HUNTER, W. H. TOWNSEND and R. L. COLBERT for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Lexington is a city of the second class operating under the commission form of government. Section 3235c-1 et seq., Kentucy Statutes. Grant E. Lilly and James J. O'Brien were nominated for mayor of the city at the primary election held on the third Saturday before the day for the regular election (section 3235c-6, Kentucky Statutes), and were voted for at the election on November 8, 1927. The canvass of the returns of the election was completed on November 12, 1927, and it was found that O'Brien was elected to the office by a majority of 935 votes. The result was certified in triplicate, but the certificates of election were left in the form book until November 18, 1927, when O'Brien filed his expense account, as required by the Corrupt Practices Act (sections 1565b-5, 1565b-6, 1565b-7), whereupon the certificates in proper form were delivered as directed by the Statutes (sections 1596a-5, 1596a-7). A contest was filed by Lilly against O'Brien on November 12, 1927, under section 1596a-12, Kentucky Statutes. The regular judge declined to preside in the case, and Hon. Pelham Johnston was duly designated, commissioned, and qualified as special judge of the Fayette circuit court to try it. The plaintiff filed a motion and affidavit to disqualify the special judge, and he declined to retire from the bench. Judgment was rendered, dismissing the contest for lack of jurisdiction of the subject-matter, from which judgment the first appeal is prosecuted.

A second contest filed by Lilly on December 17, 1927, traveled the same course, and met a like fate, and the

second appeal is from the judgment in that case. The two appeals have been argued together, and will be disposed of in a single opinion.

The question presented by the two appeals is whether the special judge designated to try the cases erred (1) in refusing to vacate the bench upon the affidavit of the plaintiff, (2) in dismissing the first contest for lack of jurisdiction of the subject-matter thereof, because the same was filed in advance of the final action of the county board of election commissioners, and (3) in dismissing the second contest because it was filed more than 10 days after the final action of the said board.

It is provided by statute that, if either party shall file with the clerk of the court his affidavit that the trial judge will not afford him a fair and impartial trial, the judge shall not preside in the case. Section 968, Kentucky Statutes.

The reasons set forth in appellant's first affidavit are, in substance, that the special judge is a law partner of Hogan Yancey, mayor of Lexington; that for some 18 months plaintiff had been attorney for and president of the Gas Consumers' League, organized to secure a reasonable price for gas furnished in the city; that thereby hostile feeling had been engendered between plaintiff and the city officials; that the newspapers had published accounts of the differences and debates, which were sometimes acrimonious; that the special judge was familiar with the facts stated and sided with Yancey; that Yancey was a partisan of O'Brien and a friend and supporter; that the special judge was a friend and supporter of O'Brien in the election; that plaintiff believed he had discussed the case with Yancey and entertained an opinion hostile to plaintiff; that plaintiff believed it would be impossible for the special judge to divest himself of his preconceived ideas of the case formed during and before the election; and that the ideas of the special judge "must be prejudicial and unfriendly to plaintiff because of his intimate association with Yancey, and his friendship for O'Brien."

It is quite impossible to spell out of this affidavit any material facts that could be construed as disqualifying the special judge to try the issues arising in a contest over the election of mayor. Indeed, the appellant does not insist, as clearly he could not, that the affidavit meets the requirements of the statute as construed by the de-

cisions of this court, but the argument is advanced that the statute is mandatory and does not require a litigant to state any reasons for his belief that he cannot obtain a fair trial, but only his conclusion that the judge will not afford him a fair and impartial trial. The argument is fallacious. Such a construction of the statute would be impracticable and would lead to absurd results. If any litigant could remove a judge simply by filing an affidavit of his belief, no case could ever be brought to trial except by consent.

This particular section of the Statutes has been construed by this court in a long line of decisions and the construction thereof has become firmly imbedded in our jurisprudence. It is now too late to argue that a simple affidavit, without supplying disqualifying facts, can oust a judge of his right and duty to preside in the trial of a case.

In the German Insurance Co. v. Landram, 88 Ky. 433, 11 S. W. 367, 592, 10 Ky. Law Rep. 1039, the court said:

"The fact or facts upon which the belief that the judge will not give the litigant a fair trial should and must be stated in the affidavit, and they must be of such a character as shall prevent the judge from properly presiding in the case. We do not mean to say the statement of the ground for belief must establish, if true, that the judge is a corrupt official, but we do mean to adjudge that such causes, and those of a like character, as have been noticed, are not sufficient, and there must be some fact stated, such as personal hostility of such a character, if that ground is relied on, as would prevent an official of personal integrity from presiding in the case; and of the sufficiency of the affidavit that the trial judge must determine, and the question, if improperly decided, can be raised in this court, as in other cases, if an appeal is taken."

In White v. Jouett, 147 Ky. 197, 144 S. W. 55, the court reviewed the authorities up to that time and concluded that the affidavit there involved was insufficient because the charges must be so direct and certain that the affiant may be subject to criminal action if the charges should be false. The law has been so often and so recently announced and applied by this court that we deem

it unnecessary to do more than cite a few of the cases. Stamp v. Commonwealth, 195 Ky. 404, 243 S. W. 27; Eastridge v. Commonwealth, 195 Ky. 126, 241 S. W. 807; Chreste v. Commonwealth, 178 Ky. 311, 198 S. W. 929; Browning v. Lovett, 94 S. W. 661, 29 Ky. Law Rep. 692; Sparks v. Colson, 109 Ky. 711, 60 S. W. 540, 22 Ky. Law Rep. 1369; Boreing v. Wilson, 128 Ky. 570, 108 S. W. 914, 33 Ky. Law Rep. 14; Hargis v. Marcum, 103 S. W. 346, 31 Ky. Law Rep. 795; Sullivan v. Commonwealth, 169 Ky. 801, 185 S. W. 134; Adams v. Gardner, 176 Ky. 257, 195 S. W. 412; Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239.

When a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written in it originally. 36 Cyc. 1144; Douglass v. Pike Co., 101 U. S. 677, 25 L. Ed. 968; McChesney v. Hager, 104 S. W. 714, 31 Ky. Law Rep. 1038.

It is clear that the affidavit in queston did not measure up to the standard of the statute, as construed by this court, and the special judge did not err in this case in declining to vacate the bench.

The charter of the city of Lexington provides that all votes shall be cast by secret ballot in such manner and form as may be prescribed by the general election law for the election of state officers. Section 3172, Kentucky Statutes. The general law for the contest of the election of state officers is section 1596a-12, Kentucky Statutes. It provides that a contest in the case of any elective municipal officer, where there is no other provision by law for determining the contest, shall be made by the filing in the circuit court of the county where the contestee resides, stating the ground of contest relied on, and no other grounds shall afterwards be relied upon; and that the petition shall be filed and process issued thereon within 10 days after the final action of the board of canvassers of the city election. By section 1596a-5 of the Statutes the county board of election commissioners is required to meet within 3 days after an election and open and canvass the returns and give triplicate or more written certificates of election over their signatures, of those who have received the highest number of votes for any office exclusively within the gift of the voters of the county, one copy of the certificate to be retained in the clerk's office, another delivered to each of

the persons elected, and the other forwarded by the county clerk to the secretary of state at the seat of government. It further provides that for offices not within the gift of the voters of a single county the number of votes received by the candidate must be certified and delivered to certain other officers specified.

It is clear that the office of mayor of Lexington is one within the gift of voters of Fayette county, residing in the city of Lexington, and is not within the gift of the voters of any other county or any part thereof. The county board of election commissioners completed the canvass of the returns on November 12, 1927, and made out in triplicate the certificates, all of which were retained in the form book in the county clerk's office. Thereafter, on November 18, 1927, O'Brien filed his expense account as required by the Corrupt Practices Act (sections 1565b-5 and 1565b-7, Kentucky Statutes), and his certificate of election was delivered to him. It is not disputed that the contest herein was filed before such final action of the board of canvassers. This court has recently reviewed the arguments and reconsidered and reconciled the authorities and has settled the question that the final action of the board of canvassers, as contemplated by section 1596a-12 of the Statutes, is the issual of the certificates of election. Colvin v. Mills, 214 Ky. 814, 284 S. W. 115. There is nothing in the decision of this court in Taylor v. Nuetzel, 220 Ky. 510, 295 S. W. 873, that affects the principle decided in Colvin v. Mills, supra.

We are therefore confronted with the question whether a contest filed before the final action of the board of canvassers is within jurisdiction of the court. In Colvin v. Mills, supra, it is said:

"The right of an unsuccessful candidate to contest the election of his successful rival is purely statutory and this court has uniformly held the statutory provision as to the time within which a contest may be instituted to be mandatory. Jurisdiction to hear and determine a contest is conferred only when it is instituted within the time prescribed by the statute conferring the right of contest."

It will be seen from an examination of the cases that the courts do not have jurisdiction of election contests, except in so far as it is conferred by statute, and, as ap-

plied to elective municipal officers, it endures only for a
period of 10 days, which begins when "the final action of
the board of canvassers" is taken, and ends 10 days
thereafer, when the fixed period expires. No other juris-
diction is conferred by statute or otherwise exists. Pat-
terson v. Knapp, 125 Ky. 474, 101 S. W. 379, 31 Ky. Law
Rep. 108; Gabbard v. Roberts, 220 Ky. 480, 295 S. W.
439; Brumleve v. Cronan, 176 Ky. 818, 197 S. W. 498;
Potter v. Campbell, 155 Ky. 784, 160 S. W. 763.

But it is argued that the 10 days fixed by the statute
is merely a law of limitation operating on the remedy and
does not affect the jurisdiction or power of the court to
hear and determine an election contest. Limitations pre-
scribed by statute to bar remedies must be pleaded and
may be waived by a party entitled to invoke them
(Rowe v. Blair, 221 Ky. 685, 299 S. W. 571), but the lim-
itation on election contests is not of that character. It
cannot be waived and need not be pleaded. The right
granted to contest an election exists only by virtue of the
statute and its scope and effect must be determined there-
from. The statute in question makes it plain that the
right and remedy and the limitation thereon are created
coincidentally and are inseparably united.

The bringing of the action within the limited time
is a condition to the exercise of the right, and, if the con-
dition is not complied with, there is neither right nor
remedy. The limitation in such case relates not merely
to the remedy, but to the right itself. The distinction is
a familiar one. Central Vermont Railroad Co. v. White,
238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433; A. J. Phillips
Co. v. Grand Trunk Western Railway Co., 236 U. S. 662,
35 S. Ct. 444, 59 L. Ed. 774.

When the limitation is coupled with the right itself,
the right lives only during the period fixed. Actions
under section 344 of the Civil Code for a new trial are
of that kind, and must be brought within three years, and,
if not so brought, may not be heard. Anderson v. Mere-
dith, 9 S. W. 407, 10 Ky. Law Rep. 460. This principle
is stated in 37 Corpus Juris, p. 686, sec. 5, as follows:

> "A wide distinction exists between pure stat-
> utes of limitation and special statutory limitations
> qualifying a given right. In the latter instance time
> is made an essence of the right created and the lim-
> itation is an inherent part of the statute or agree-
> ment out of which the right in question arises, so

that there is no right of action whatever independent of the limitation. A lapse of the statutory period operates, therefore, to extinguish the right altogether. To such limitations the rules of law governing pure statutes of limitation, applicable to all classes of action, have no application; they are to be determined by the law of the place under which the right of action arose or the contract was made, and are not to be treated as waived merely because they are not specially pleaded. They are not subject to the disabilities and excuses through which the effect of ordinary statutes of limitation may be avoided, nor, it seems, can they be evaded even by proof of fraud. Whether a particular limitation of time is to be regarded as a part of the general statute of limitations or as a qualification of a particular right must be determined from the language employed and from the connection in which it is used."

It is further elaborated and supported by the citation of authorities in 37 C. J. p. 732, sec. 51, as follows:

"Where by a statute a right of action is given which did not exist by the common law, and the statute giving the right fixes the time within which the right may be enforced, the time so fixed becomes a limitation or condition on such right, and will control, no matter in what form the action is brought. But this rule is held to be inapplicable where no limit of time is prescribed by the statute giving the right of action, although a limitation is imposed by the general statutes of the state. On the other hand it is declared that the rule does not apply, even if the limitation is in a different statute, provided it is directed to the newly created liability so specifically as to warrant saying that it qualifies the right. Moreover the general rule first above stated is exceptional, and does not make the general provisions of the statute of limitations existing in the jurisdiction where the liability was created operate extraterritorially." Rodman v. Mo. Pac. Ry. Co., 65 Kan. 645, 70 P. 642, 59 L. R. A. 704; Davis v. Mills, 194 U. S. 451, 454, 24 S. Ct. 692, 48 L. Ed. 1067; Foll. Northern Pac. R. Co. v. Crowell (D. C.) 245 F. 668; Osborne v. Grand Trunk R. Co., 87 Vt. 104; 88 A. 512, Ann. Cas. 1916C, 74.

It is further argued that the bringing of the first contest, although premature in fact, was cured by the amendments filed subsequent to November 18, 1927, after the cause of action had accrued; but an amended petition relates back to the original petition, and, if the original action was filed prematurely, it must be dismissed, carrying the amendments with it. Gibson v. Johnson, 65. S. W. 116, 23 Ky. Law Rep. 1322; Holton v. Jackson, 184 Ky. 559, 212 S. W. 587; 1 Corpus Juris, p. 107, sec. 169; 1 R. C. L. sec. 21, p. 340.

In American Bonding & Trust Co. v. Gibson County, 145 F. 871, 7 Ann. Cas. 522 (6 C. C. A.) the court said:

> "Plaintiff's suit was prematurely brought, and no amendment declaring upon a cause of action which did not exist when the suit was commenced would cure such a defect. If no cause of action existed when the suit was started, there was nothing to amend, and when this fact appeared, and objection was made, the suit should have been dismissed without prejudice to an action upon the cause of action which did accrue when the architect audited the claim. It was not a case of a cause of action defectively stated. Such a defect is amendable. Neither was it a case of a new cause of action brought in by amendment, which existed when the suit was brought. It was an effort to declare and recover upon a cause of action which arose pending the suit.
>
> "Plaintiff's right to any recovery depended upon its right at the inception of the suit, and the nonexistence of a cause of action when the suit was started is a fatal defect, which cannot be cured by the accrual of a cause pending suit. De Mattos v. Jordan, 20 Wash. 315, 55 P. 118; Hollingsworth v. Flint, 101 U. S. 591, 596, 25 U. S. (L. Ed.) 1028; Wadley v. Jones, 55 Ga. 329; Moon v. Johnson, 14 S. C. 434; Linn v. Scott, 3 Tex. 67; Wetherell v. Evarts, 17 Vt. 219; Jennings v. Zerr, 48 Mo. App. 528; Turner v. Pierce, 31 Wis. 342; Bell v. Bullion, 2 Yerg. (Tenn.) 479; Carter v. Turner, 2 Head (Tenn.) 52; Robinson v. Grubb, 8 Baxt. (Tenn.) 19; Pigue v. Young, 85 Tenn. 263, 1 S. W. 889; Blevins v. Alexander, 4 Sneed (Tenn.) 583. In Bell v. Bullion, cited above, it was held that prematurity of suit was ground for arrest of judgment when the

fact appeared upon the record. In Carter v. Turner, cited above, it was held to be matter in abatement or demurrer according as the fact appeared or not upon the record. To the same effect are. Hovey v. Sebring, 24 Mich. 232, 9 Am. Rep. 122; Weinwick v. Bender, 33 Mo.. 80; Storm v. Livingston, 6 Johns. (N. Y.) 45; Dean v. Metropolitan El. R. Co., 119 N. Y. 540, 23 N. E. 1054; Scott v. Fowler, 14 Ark. 427; Barnes v. Gibbs, 31 N. J. Law, 317, 86 Am. Dec. 210. When prematurity appears, the suit should be dismissed without prejudice to the right to institute a suit upon the cause of action when mature. 16 Enc. of Pl. & Pr. 875; Loomis v. Donovan, 17 Ind. 198; Duryee v. Turner, 20 Mo. App. 34; Green v. Demoss, 10 Humph.(Tenn.) 371, 377.'' Eveland v. Detroit Machine Tool Co. (D. C.) 18 F. (2d) 968.

In a note to the American Bonding & Trust Co. case in 7 Ann Cas., at page 524, it is said:

''The rule applied in the reported case, that the fact that a cause of action has accrued pending a suit will not cure the nonexistence of a cause of action at the commencement of the suit, is well settled.''

Authorities from many jurisdictions are cited in the notes to sustain the statement quoted. The principle is aptly illustrated by the case of Wheatland v. Lovering, 10 Gray (Mass.) 16, where a suit was brought upon a cause of action of which the court had no jurisdiction. Subsequent to the time the suit was brought, a statute took effect giving the court jurisdiction of the subject-matter thereof. It was held that, as no jurisdiction existed at the time the suit was brought, it was premature, and the fatal defect could not be cured by jurisdiction later bestowed..

The case of Kelly v. Kelly, 2 Duv. 363, sometimes cited as an exception to the general rule, in reality recognizes the principle. It was there held that, even though the action might be regarded as premature in so far as it sought a rescission of a contract, yet it showed a present right to an injunction, as well as a probable ground for the future action of the court, as to which matters the action was not premature. So whether the action of the lower court in this case be based upon the lack of jurisdiction, as defined in Colvin v. Mills, or prematurity of

the action, as argued by appellant, the result must be the same.

It is suggested that appellee waived his right to object to the jurisdiction of the court, or the prematurity of the action, by a general appearance and the filing of various motions. But the suggestion is not sound. That the court has no jurisdiction of the subject-matter of the action may not be waived, (Civil Code, sec. 92, subsec. 4; Commonwealth v. Adkins, 169 Ky. 487, 184 S. W. 373); and that no cause of action had accrued or existed when the suit was commenced cannot be aided by amendment, or waived by delay in calling attention to it (1 C. J. p. 269, sec. 596; American Bonding Co. v. Gibson Co. [C. C. A.] 145 F. 871, 7 Ann. Cas. 523; Peters v. Hangar [C. C. A.] 134 F. 586; Gibson v. Johnson, 65 S. W. 116, 23 Ky. Law Rep. 1322; Holton v. Jackson, 184 Ky. 559, 212 S. W. 587; Kash v. Strong, 165 Ky. 843, 178 S. W. 1133.)

It follows that the judgment in the first case was right and must be affirmed.

The second contest suit was brought by Lilly against O'Brien on December 17, 1927, which was more than 10, but within 30, days after the issual of the certificate to the winner on November 18, 1927. The regular circuit judge also declined to hear that case and the same special judge was designated to try it. Another affidavit was filed similar to the one filed in the first case, but with the additional allegation:

"That he is informed, and charges it to be true, that said Hogan Yancey has been promised the office of corporation counsel for Lexington, Ky., by the defendant, James J. O'Brien, and his fellow commissioners, in return for his influence and support in the election; of all of which Judge Johnson is advised."

It was admitted of record that the allegation was based entirely upon rumur. The additional matter in the affidavit, coupled with the same matters mentioned in the first one, was manifestly insufficient, under the decisions of this court, to disqualify the special judge, and he did not err in declining to vacate the bench in the second case.

It is insisted that a contest of the mayor's office in a city of the second class may be filed within 30 days after the final action of the board of canvassers. The argu-

ment is deduced from section 3172, Kentucy Statutes, which provides that all contested elections of elective municipal officers shall be tried as provided by the general laws for a contest of the election of state officers. The general law for the election of state officers provides that, when the contest involves any state office, or a district office, comprising more than one county, 30 days' time is allowed to commence it, but in cases of any other office it must be filed within 10 days after final action of the canvassing board. Obviously a mayor of the city of Lexington is not an officer elected by the voters of the whole state, or any district comprising more than one county, and, consequently, it is expressly included in the general clause "any other officer," to contest whose election the action must be brought within 10 days after final action by the board of canvassers. It is clear beyond doubt that the second action was filed too late, and, as no jurisdiction existed to entertain it, the dismissal was proper. Allen v. Haddix, 178 Ky. 390, 198 S. W. 1155; Doss v. Howard, 180 Ky. 413, 202 S. W. 888; Hewlett v. Carter, 194 Ky. 454, 239 S. W. 789; Colvin v. Mills, 214 Ky. 812, 284 S. W. 115; Lowry v. Stotts, 138 Ky. 251, 127 S. W. 789.

No hardship need result from the relatively short time allowed by the statute within which to institute an election contest. It accords with the policy generally dominant in such legislation, looking to a speedy conclusion of controversies over elections. It expressed the legislative judgment at the time the law was enacted, and no change has been made since as the result of experience with it. If a longer period for the purpose of a contest should be deemed desirable, the remedy rests where the power resides, and that is with the lawmaking branch of the government.

The judgments are affirmed on both appeals.

Whole court sitting.